IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

FEDERAL DEPOSIT INSURANCE
CORPORATION, as manager of the
FSLIC Resolution Fund,

   Plaintiff,

  vs.                 No. CIV 92-0232 JC/WWD

CHARLES E. CURRIER, et al.,

   Defendants.

## MEMORANDUM OPINION AND ORDER

THIS MATTER came on for consideration of Defendant K. Douglas Perrin's Motion to Set Aside Order of April 8, 1996 *(Doc. 568)*, and Plaintiff's Motion for Entry of Judgment against K. Douglas Perrin *(Doc. 565)*, both filed October 22, 1997. The Court has reviewed the motions, the memoranda submitted by the parties and the relevant authorities. The Court finds that Defendant Perrin's motion is not well taken and will be denied. Plaintiff's Motion for Entry of Judgment will be taken under advisement.

### Background

On March 4, 1994, following a settlement conference with Magistrate Judge Deaton, Defendant Perrin signed a "Memorandum of Understanding Re Settlement of Claims of RTC Against K. Douglas Perrin." Until recently, Perrin did not dispute that an agreement had been reached. Instead, Perrin disputed only one provision of the agreement--the date from which interest would accrue on the settlement amount, especially in light of the lengthy delays in effecting the settlement.

Specifically, Perrin objected to paying interest for those periods of delay beyond his control while the Resolution Trust Corporation (RTC )obtained internal approval of the final forms of the settlement documents.

Plaintiff Federal Deposit Insurance Corporation (FDIC) succeeded to the rights of the RTC on December 31, 1995, and it has acknowledged that much of the delay in executing the settlement documents was caused by the change in authority from the RTC to the FDIC. In August 1995, the RTC filed a motion to enforce the settlement agreement. At that point, however, numerous unopposed extensions of time to respond to the motion were granted to Perrin while the RTC considered Perrin's request for abatement of interest during the periods of delay for which he was not responsible.

It was not until March 1996 that the Court indicated it would grant the motion for failure to respond unless Perrin filed a response to the motion to enforce by March 29, 1996. Evidently, yet another round of negotiations ensued, and counsel for the FDIC memorialized an agreement by Perrin to execute the settlement documents by the end of April 1996. Unaware that the parties seemed to have resolved their differences, an order was entered granting the motion to enforce on April 8, 1996.

Yet again, however, the date from which interest should accrue became a matter of dispute as Perrin insisted that there be no interest until the execution of the finalized settlement documents. As evidence of good faith of his intent to comply with the negotiated settlement, Perrin sent FDIC's counsel a $15,000 payment. It was not until mid-February 1997 that the FDIC-approved documents for finalizing the settlement were received by Perrin. The FDIC had agreed to waive eight months of interest following the signing of the March 4, 1994 memorandum of understanding, the period of delay resulting from RTC's procedures for obtaining approval.

Defendant Perrin then notified the FDIC that because of the intervening Supreme Court decision in United States v. Winstar Corp., 116 S.Ct. 2432 (July 1, 1996), he no longer felt "any obligation to comply with any settlement." Perrin's March 11, 1997 Letter to Schlagel at ¶ 4. Perrin refused to execute the documents even when the FDIC agreed to waive *any* interest prior to the final execution of the settlement documents as Perrin had requested. Perrin instead filed his motion to set aside the April 8, 1996 Order enforcing the settlement. The FDIC countered with its motion for entry of judgment.

**Analysis**

Perrin seeks relief pursuant to Rule 60(b) of the Federal Rules of Civil Procedure on several grounds, all of which are unavailing. First, Perrin contends that any settlement reached should be rescinded because it was the product of a mistake of both law and fact in light of the Winstar decision cited above. In Winstar, the plaintiff thrifts had negotiated contracts with the bank regulatory agencies that allowed them to include supervisory goodwill (and capital credits) as assets for regulatory capital purposes and to amortize that supervisory goodwill over extended periods of time. The Supreme Court held that when the law as to capital requirements changed, the government was unable to perform its promise and became liable to the thrift for breach of contract. Id. In essence, Perrin asserts that the settlement was based upon a mistaken belief that the government was not legally responsible for Valley's institutional failure.

Yet the claims brought against Perrin were for alleged negligence and breach of fiduciary duty as a former director of Valley Federal and for alleged malpractice in Perrin's legal representation of the institution in specifically-identified transactions. These claims could have arisen independently of Valley Federal's insolvency. Moreover, Perrin has failed to demonstrate that the FDIC, not Perrin,

should bear the risk of any mistake as is required to justify rescission of the agreement.  See Twin Forks Ranch, Inc. v. Brooks, 120 N.M. 832 (Ct. App. 1995).

Perrin further argues that under Rule 60(b), it would be fundamentally unfair and unjust to enforce the settlement agreement in light of the Winstar decision and that he should now be permitted to proceed to trial.  Whether cast under Rule 60(b)(1) or 60(b)(6), the motion to set aside the enforcement order is without merit.  As an attorney licensed to practice law in both New Mexico and Texas, Perrin could hardly be seen as an unsophisticated, unknowledgeable individual entering into a settlement without knowing the full import of his actions.  Everything indicates that Perrin made a considered and deliberate litigation decision when he agreed to the settlement.  Thus, he "cannot be relieved from such a choice because hindsight seems to indicate to him that the decision [whether to continue litigation] was probably wrong . . . .  There must be an end to litigation someday." Ackermann v. United States, 340 U.S. 193, 198 (1950); see also, Cashner v. Freedom Stores, Inc., 98 F.3d 572 (10th Cir. 1996) (Rule 60(b) relief unavailable when defendant's stipulated settlement constituted a "free, counseled, deliberate choice whose consequences in hindsight are unfortunate").

Finally, Perrin contends that he was forced under duress to enter the settlement and that it would be unconscionable under due process principles to enforce the agreement.  He acknowledges, however, that during the settlement conference Magistrate Judge Deaton "very kindly and properly explained the risks of going forward" with the litigation.  Response Brief at 4.  Perrin further admits that he accepted the settlement because of the financial burdens imposed by continuing to trial.  In short, the types of concerns cited by Perrin are those typically encountered and considered by a litigant in entering into a negotiated resolution.  They do not rise to a level of duress sufficient to

characterize his decision to settle as "involuntary." Therefore, Perrin has failed to demonstrate that the order to enforce the settlement should be vacated.

Having determined that the order will not be set aside, the Court is nevertheless hesitant to provide the full relief sought by Plaintiff. The FDIC seeks entry of judgment for the principal amount of $75,000 plus 6% interest from and after February 4, 1995, until it is paid in full. The memorandum of understanding reached March 4, 1994 provides for installment payments and that the note to be executed "will provide that in the event that a required payment is not made, a judgment can be entered for the entire amount of principal and interest which is due." Memorandum of Understanding at ¶ 4. Yet no such note has been executed due to the dispute surrounding the date from which interest should be calculated.

I am further concerned by the FDIC's acknowledgment that a great deal of the delay surrounding finalization of the documents arose from its internal operations, the long history of negotiations between the parties on this point, and the FDIC's willingness in April 1997 to waive *all* interest prior to execution of the final settlement documents. Thus, the Court is reluctant to enter a judgment for the full amount with interest from a date when parties were actively, albeit slowly, seeking a negotiated resolution of the interest provision. Plaintiff's motion for entry of judgment will therefore be taken under advisement.

Wherefore,

IT IS ORDERED that Defendant K. Douglas Perrin's Motion to Set Aside Order of April 8, 1996 *(Doc. 568)* be, and hereby is, **denied**.

IT IS FURTHER ORDERED that Plaintiff's Motion for Entry of Judgment against K. Douglas Perrin *(Doc. 565)* be, and hereby is, **taken under advisement**.

DATED this 23rd day of January, 1998.

_____
**CHIEF UNITED STATES DISTRICT JUDGE**

Counsel for Plaintiff:		Rodney L. Schlagel
				Butt, Thornton & Baehr, P. C.
				Albuquerque, New Mexico

Counsel for Defendant:		Doug Perrin, Pro Se
				Arlington, Texas